## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:21-CR-129** |
| **Plaintiff,** | |
| **v.** | **CHIEF JUDGE MARBLEY** |
| **ARMANDO RIVERA-SERENO** | |
| **Defendant.** | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS THE INDICTMENT

The United States, by and through undersigned counsel, hereby submits the following response to Defendant Armando Rivera-Sereno's motion to dismiss the indictment. For the reasons set forth in this memorandum, the defendant's motion should be denied.

## MEMORANDUM

### I.     Factual and Procedural Background

Armando Rivera-Sereno is a citizen of Mexico with no legal status in the United States. (Doc. #1, Criminal Complaint, PAGEID #2.) The defendant was removed from this country on or about September 9, 2003 and February 14, 2005, respectively. (*Id.*) On or about February 22, 2005, he returned to the United States again. (*Id.*) This time, he was convicted of illegal entry, in violation of 8 U.S.C. § 1325, in the Northern District of Texas. (*Id.* at PAGEID #2-3.) After serving 179 days of imprisonment, Rivera-Sereno was removed from the United States a third time. (*Id.* at PAGEID #3.) Undeterred, the defendant continued to return unlawfully, and was removed two additional times in 2012. (*Id.*) In total, the defendant was removed from the United States five times between 2003 and 2012. (*Id.* at PAGEID #2-3.)

1

Rivera-Sereno illegally reentered the United States once again. But this time, the consequences were far more severe. On or about February 2, 2021, the Franklin County Sheriff's Office arrested the defendant after he allegedly shot his roommate in the torso with a shotgun. (*Id.* at PAGEID #3.) The victim was hospitalized. (*Id.*) As a result, Rivera-Sereno was charged with two counts of felonious assault, in violation of O.R.C. § 2903.11, and one count of tampering with evidence, in violation of O.R.C. § 2921.12, in the Franklin County Court of Common Pleas. (*Id.*)

On June 14, 2021, this Court issued a criminal complaint charging Rivera-Sereno with illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a). (Doc. #1.) Officers from Immigration and Customs Enforcement (ICE) arrested the defendant on June 13, 2021. (Doc. #4, Minutes of Initial Appearance.) On July 15, 2021, the grand jury in this district returned an indictment charging the defendant with one count of illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a). (Doc. #14, Indictment.) The defendant has entered a plea of not guilty to the charge in the indictment. (Minute Entry, Arraignment, July 23, 2021.)

On September 23, 2021, Rivera-Sereno filed a motion to dismiss the indictment. (Doc. #22, Motion to Dismiss.) The defendant asserts that 8 U.S.C. § 1326 is unconstitutional under the Equal Protection Clause of the Fifth Amendment because its **predecessor** statute was motivated by racial animus and because it has a discriminatory impact. The defendant's motion is based on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), a case involving a re-zoning request to accommodate low-income housing. But despite Rivera-Sereno's rhetoric, *Arlington Heights* does not support the defendant's argument that this Court should strike down section 1326 as unconstitutional. Far from it, in fact.

Rivera-Sereno's motion is flawed in at least three respects. First, section 1326 is part of

2

the federal government's immigration regulation framework, an area over which Congress has vast authority. As a result, the constitutionality of the statute should be evaluated under the rational basis standard; a more searching judicial inquiry is not appropriate. Section 1326, which is intended to deter illegal reentry by previously deported aliens and bears a rational relationship to the government's legitimate interest in enforcing its immigration laws, easily satisfies that deferential standard. The defendant's motion does not mention, let alone attempt to address and distinguish, Supreme Court and circuit court authority requiring rational basis review.

Second, to the extent the Court finds it necessary to apply the *Arlington Heights* analysis, the defendant cannot satisfy his burden of showing discriminatory intent and disparate impact. The defendant's argument as to the former fails because it focuses on the legislative motives of the Congress in 1929, not the Congress that actually passed section 1362 as part of a comprehensive immigration bill in 1952. The defendant's argument as to the latter fails because the alleged disparate impact is a function not of unlawful discrimination, but of the proximity of Latin American countries to the United States and the political, social, and economic conditions in Mexico and Central America.

Third, Rivera-Sereno's motion is not novel, and this Court is not writing on a blank slate. Recently, numerous defendants charged with illegal reentry in judicial districts around the county have filed motions challenging the constitutionality of section 1326 on equal protection grounds under *Arlington Heights*. Those motions have been denied over and over. *See United States v. Bernal*, No. 21-CR-01817, 2021 U.S. Dist. LEXIS 178922 (S.D. Cal. Sept. 20, 2021); *United States v. Sanchez-Rodriguez*, No. 21-CR-02351, 2021 U.S. Dist. LEXIS 178896 (S.D. Cal. Sept. 20, 2021); *United States v. Orozco-Orozco*, No. 21-CR-02349, 2021 U.S. Dist. LEXIS 178951 (S.D. Cal. Sept. 20, 2021); *United States v. Novondo-Ceballos*, No. 21-CR-383, 2021

U.S. Dist. LEXIS 151779 (D.N.M. Aug. 12, 2021); *United States v. Machic-Xiap*, No. 3:19-CR-407, 2021 U.S. Dist. LEXIS 145037 (D. Or. Aug. 3, 2021); *United States v. Wence*, No. 3:20-CR-0027, 2021 U.S. Dist. LEXIS 112805 (D.V.I. June 16, 2021); *United States v. Gutierrez-Barba*, No. CR-19-01224, 2021 U.S. Dist. LEXIS 99844 (D. Az. May 25, 2021); *United States v. Medina-Zepeda*, No. 2:20-CR-00057, Doc. #33 (C.D. Cal. Jan. 5, 2021); *United States v. Palacios-Arias*, No. 3:20-CR-062, Doc. #37 (E.D. Va. Oct. 13, 2020).[1] Rivera-Sereno cites *none* of these cases in his motion. As far as the government is aware, the defendant's argument has been endorsed in only a single instance in the District of Nevada, *United States v. Carrillo-Lopez*, No. 3:20-CR-00026, 2021 U.S. Dist. LEXIS 155741 (D. Nev. Aug. 18, 2021). *Carrillo-Lopez* is a true outlier that is inconsistent with well-established precedent.[2] This Court should follow the numerous cases that have correctly upheld section 1326 against equal protection challenges, all of which the defendant has conveniently ignored. The instant motion to dismiss should be denied.

## II.     Argument

### A.     Section 1326 Should Be Upheld Under the Rational Basis Standard.

#### 1.     Congress Exercises Plenary Power Over Immigration Law and Policy.

"At the outset, it is important to underscore the limited scope of judicial inquiry into immigration legislation." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). It is well-established that "[t]he Government of the United States has broad, undoubted power over the subject of

---

[1] Defendants have relied on *Arlington Heights* to mount similarly unsuccessful equal protection challenges to 8 U.S.C. § 1325, which criminalizes illegal entry into the United States. *See, e.g.*, *United States v. Rios-Montano*, No. 19-CR-2123, 2020 U.S. Dist. LEXIS 230122 (S.D. Cal. Dec. 8, 2020); *United States v. Lazcano-Neria*, No. 3:20-MJ-04538, 2020 U.S. Dist. LEXIS 201900 (S.D. Cal. Oct. 29, 2020); *United States v. Ruiz-Rivera*, No. 3:20-MJ-20306, 2020 U.S. Dist. LEXIS 161033 (S.D. Cal. Sept. 2, 2020).

[2] The United States has filed a notice of appeal of the District of Nevada's decision. *See Carrillo-Lopez*, No. 3:20-CR-0026, Doc. #62 (D. Nev. Aug. 19, 2021).

immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Since the late 1880s, "it has been universally acknowledged that Congress possesses sweeping authority over immigration policy as 'an incident of sovereignty.'" *Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1089 (9th Cir. 2021) (*quoting Chae Chan Ping v. United States*, 130 U.S. 581, 609 (1889)). Because decisions in immigration-related matters "may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Trump v. Hawaii*, 138 S. Ct. 2392, 2418-2419 (2018) (internal quotation marks and citation omitted); *see Matthews v. Diaz*, 426 U.S 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."). Congress's expansive power over immigration law and policy is routinely described as "plenary." *See, e.g., Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972); *Sad v. INS*, 246 F.3d 811, 821 (6th Cir. 2001). As the Supreme Court has explained, "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (internal quotation marks and citation omitted).

Congress's plenary authority to control immigration extends to "defining criminal immigration offenses." *United States v. Osorto*, 995 F.3d 801, 814 (11th Cir. 2021). This has been the law for over a century. *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("[I]t would be plainly competent for Congress to declare the act of an alien in remaining unlawfully within the United States to be an offence, punishable by fine or imprisonment, if such offence were to be established by a judicial trial."). During the passage of many decades, courts have neither "questioned [n]or contradicted" the Supreme Court's endorsement of "Congress's

prerogative to enact criminal immigration laws." *United States v. Hernandez-Guerrero*, 147

F.3d 1075, 1077 (9th Cir. 1998). To the contrary, as recently as 2018, the Supreme Court

reaffirmed that a "deferential standard of review" applies when the judiciary examines legislation

regarding immigration. *Hawaii*, 138 S. Ct. at 2419; *see Almario v. Attorney General*, 872 F.2d

147, 150 (6th Cir. 1989) ("The Supreme Court has long acknowledged that Congress' unfettered

discretion over the admission or expulsion of aliens 'is a fundamental sovereign attribute

exercised by the Government's political departments largely immune from judicial control.'")

(*quoting Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). Congress's "broad power over

immigration and naturalization" in both the criminal and civil contexts permits it to "regularly

make[] rules that would be unacceptable if applied to citizens." *Fiallo*, 430 U.S. at 792 (internal

quotation marks and citation omitted); *see Hernandez-Guerrero*, 147 F.3d at 1077 ("[I]n

exercising its immigration power, Congress is not subject to the rigid constraints that govern its

authority in domestic contexts.").

> **2. Immigration-Related Laws and Policies are Evaluated Under the Rational Basis Standard.**

In light of the expansive authority that Congress (and, in some instances, the President)

wields in this area, the Supreme Court has decided that the rational basis standard applies to

judicial review of immigration laws and policies. *See Hawaii*, 138 S. Ct. at 2419-2421 (applying

rational basis review to entry restrictions on foreign nationals that allegedly discriminated against

Muslims); *Flores*, 507 U.S. at 306 (explaining that immigration regulations must "meet the

(unexacting) standard of rationally advancing some legitimate governmental purpose"); *Fiallo*,

430 U.S. at 792 ("[T]he power over aliens is of a political character and therefore subject only to

narrow judicial review."); *Diaz*, 426 U.S. at 82 (emphasizing the "narrow standard of review of

decisions made by the Congress or the President in the area of immigration and naturalization").

Consistent with this Supreme Court authority, the Sixth Circuit has repeatedly held that equal protection challenges to immigration-related statues and orders are subject to rational basis review. *See*, *e.g.*, *Guzman v. Department of Homeland Security*, 679 F.3d 425, 432 (6th Cir. 2012); *Sad*, 246 F.3d at 821-822; *Hamama v. INS*, 78 F.3d 233, 237 (6th Cir. 1996); *Almario*, 872 F.2d at 152 ("The role of the courts in analyzing an equal protection challenge to a federal immigration statute is limited to determining whether the statute at issue is conceivably related to the achievement of the federal interest.") (citation omitted).[3]  In so holding, the Sixth Circuit has expressly rejected the application of heightened standards of review. *See Guzman*, 679 F.3d at 431-432 (rejecting intermediate scrutiny); *Sad*, 246 F.3d 811 at 822 (rejecting strict scrutiny); *Almario*, 872 F.2d at 152 (rejecting strict scrutiny).  The Supreme Court has recently done the same. *See Hawaii*, 138 S. Ct. at 2420 n.5 (rejecting a "more free-ranging inquiry" than rational basis review).

The Sixth Circuit is not alone.  Its sister circuits also apply the rational basis standard to constitutional challenges to laws regulating immigration. *See*, *e.g.*, *Osorto*, 995 F.3d at 811 ("[F]ederal laws that discriminate against noncitizens must pass only rational-basis scrutiny under the Fifth Amendment."); *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011) ("We review equal protection challenges to federal immigration laws under the rational basis standard[.]"); *Soskin v. Reinertson*, 353 F.3d 1242, 1255 (10th Cir. 2004) ("When Congress exercises [its] powers to legislate with regard to aliens, the proper standard of judicial review is rational-basis review."); *Appiah v. INS*, 202 F.3d 704, 710 (4th Cir. 2000) ("[J]udicial review over federal immigration legislation has always been limited.").

---

[3] In fact, the Sixth Circuit has stated that when evaluating an immigration law, judicial review is "even ***more deferential*** than rational-basis review." *Sad*, 246 F.3d at 822 (emphasis added); *see id.* at 821 ("In the case of immigration matters, rational-basis review requires even less because of Congress's plenary power over the field.").

Recently, in denying motions to dismiss just like this one, numerous district courts have evaluated equal protection challenges to section 1326 under the rational basis standard. In each of these cases, the court rejected the *Arlington Heights* analysis in favor of rational basis review. *See Bernal*, 2021 U.S. Dist. LEXIS 178922, at *1 ("The Court finds that the rational basis test applies to Defendant's motion."); *Sanchez-Rodriguez*, 2021 U.S. Dist. LEXIS 178896, at *1 (same); *Orozco-Orozco*, 2021 U.S. Dist. LEXIS 178951, at *1 (same); *Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *10 ("Defendant's analysis of § 1326 under the *Arlington Heights* standard is incorrect, because as an immigration law, it is subject to rational basis review."); *Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at *12 (concluding that "*Arlington Heights* [does not] govern the Court's analysis" and "examin[ing] § 1326 under a rational basis review"); *Palacios-Arias*, No. 3:20-CR-062, Doc. #37 at PAGEID #540 (E.D. Va. Oct. 13, 2020) (finding government's argument to apply rational basis review and reject *Arlington Heights* standard "persuasive" and noting that defendant's equal protection challenge to section 1326 would also fail under heightened review).[4]

Though Rivera-Sereno may argue otherwise, it makes no difference that the defendant is challenging the constitutionality of a criminal (instead of a civil) immigration statute. The long line of authority summarized above applies with equal force to civil and criminal immigration laws. *See Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *8 (rejecting argument that "a different standard of equal protection review applies to laws that are criminal versus civil in nature"); *United States v. Carpio-Leon*, 701 F.3d 974, 982-983 (4th Cir. 2012) (applying rational basis review to equal protection challenge to federal law prohibiting aliens from possessing

---

[4] Federal courts also apply rational basis review to equal protection challenges to the sentencing guidelines for illegal reentry. *See Osorto*, 995 F.3d at 821-822; *United States v. Alejo-Pena*, 474 F. App'x 137, 138 (4th Cir. 2012); *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091-1092 (9th Cir. 2007).

firearms). In the immigration arena, courts have been reluctant to make distinctions that would undermine the application of the rational basis standard. *See City of Chicago v. Shalala*, 189 F.3d 598, 604-605 (7th Cir. 1999) ("For purposes of equal protection analysis, Congress' interest in regulating the relationship between our alien visitors and the national government ought not to be defined in such narrow terms as to preclude application of the rational basis test.").

### 3. Section 1326 Easily Passes Muster Under Rational Basis Review.

Rivera-Sereno's equal protection challenge to section 1326 should be reviewed under the rational basis standard. In applying this highly deferential level of judicial scrutiny, a district court must determine whether the challenged statute is "rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985). The scope of the inquiry is exceedingly narrow:

> [A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety, or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations – illogical, it may be, and unscientific.

*Sad*, 246 F.3d at 821 (*quoting Heller v. Doe*, 509 U.S. 312, 320-321 (1993)).

Rational basis review of an equal protection challenge "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications*, 508 U.S. 303, 313 (1993); *see Hamama*, 78 F.3d at 237 ("Rational basis review does not require us to identify the legislature's actual rationale for the distinction; rather, we will uphold the statute if there are plausible reasons for Congress' action.") (internal quotation marks and citation

omitted). Because of the considerable level of deference, federal courts "hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Hawaii*, 138 S. Ct. at 2420.

Section 1326 unquestionably bears some rational relationship to a legitimate governmental interest. This law (as well as its companion statute, section 1325) is a critical component of the federal government's "extensive and complex" "governance of immigration and alien status." *Arizona*, 567 U.S. at 395. Even a cursory review of the text of section 1326 reveals its purpose – to regulate immigration and deter illegal reentry by aliens who have been previously deported from the United States. The statute is intended to "effectively enforce the immigration laws," *see United States v. Barron-Rivera*, 922 F.2d 549, 555 (9th Cir. 1991), and to "assist in the control of unlawful immigration by aliens," *see Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968). *See also United States v. Cupa-Guillen*, 34 F.3d 860, 863 (9th Cir. 1994) ("[T]here is a strong societal interest in controlling immigration and in effectively policing our borders.").

In enacting section 1326, Congress sought to "give teeth to civil immigration statutes" and "ensure compliance with civil deportation orders." *Hernandez-Guerrero*, 147 F.3d at 1078. Without the threat of criminal prosecution of aliens who reenter the United States after being removed from this country, "Congress's immigration-regulation authority would be fatally undermined – all bark and no bite." *Id.* Accordingly, section 1326 "is well within the ambit of Congress's sweeping power over immigration matters." *Id.*; *see Ruiz-Chairez*, 493 F.3d at 1091 ("[T]he illegal reentry statute is a proper exercise of Congress's immigration power.").

District courts evaluating equal protection challenges to section 1326 have repeatedly – and easily – concluded that section 1326 satisfies the rational basis standard. *See Bernal*, 2021 U.S. Dist. LEXIS 178922, at *1-2 ("Section 1326 satisfies the rational basis test because it is

rationally related to the legitimate government interest of deterring illegal reentry into the United States."); *Sanchez-Rodriguez*, 2021 U.S. Dist. LEXIS 178896, at *1-2 (same); *Orozco-Orozco*, 2021 U.S. Dist. LEXIS 178951, at *1-2 (same); *Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *9 ("[Section] 1326 satisfies the rational basis test because it is a regulatory statute enacted to assist in the control of unlawful immigration by aliens.") (internal quotation marks and citations omitted); *Wence*, 2021 U.S. Dist. LEXIS 112805, at *30 ("The United States undeniably has a legitimate interest in regulating its borders and preventing the entry of those who have committed violent and drug-related crimes, as well as the reentry of those who have violated immigration laws in the past."); *Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at *12 (agreeing that "there is a legitimate interest in deterring illegal reentry and there is a clear rational relationship between that interest and Section 1326 which criminalizes and deters illegal reentry"); *Palacios-Arias*, No. 3:20-CR-062, Doc. #37 at PAGEID #541 (E.D. Va. Oct. 13, 2020) (concluding that "[t]he government undoubtedly has a legitimate interest in deterring illegal reentry into the United States" and that section 1326 "rationally relates to that interest by sanctioning those who disregard a previous deportation order."). There is no reason for this Court to find otherwise.

It is worth noting that section 1326 does not bear the hallmarks of those rare laws that fail rational basis review. The statute does not "lack any purpose other than a bare desire to harm a politically unpopular group," nor is the statute "inexplicable by anything but animus." *Cf. Hawaii*, 138 S. Ct. at 2420-2421. Instead, it is a sensible, reasonable, race-neutral statute designed to support federal immigration policy by deterring aliens from illegally reentering the United States. Whether the enforcement of section 1326 affects individuals from some countries differently than others is beside the point. This is "[b]ecause Congress may favor some

11

nationalities over others when enacting immigration laws." *Sad*, 246 F.3d at 822.

In sum, section 1326 is rationally related to a legitimate government interest and well within Congress's plenary authority over immigration matters.  The defendant's motion to dismiss should be denied.

**B.**     ***Arlington Heights* Does Not Call the Constitutionality of Section 1326 into Question.**

**1.**     **The Defendant's Reliance on *Arlington Heights* is Misplaced.**

As a threshold matter, Rivera-Sereno has cited no authority supporting his view that *Arlington Heights*, a case involving a local re-zoning request to facilitate low-income housing, can and should apply to federal immigration laws.  This not surprising.  The intrusive *Arlington Heights* inquiry is antithetical to the Supreme Court's longstanding directive that "it is not the judicial role . . . to probe and test the justifications of immigration policies."  *Hawaii*, 138 S. Ct. at 2419 (internal quotation marks and citation omitted).  *Arlington Heights* invites review of "circumstantial and direct evidence of intent," the "historical background of the decision," the "specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural sequence," and the "legislative or administrative history."  *Arlington Heights*, 429 U.S. at 266-268.  Such an inquiry cannot be squared with the plenary power Congress exercises over immigration-related matters and the narrow judicial review over such legislative decisions.  A test that was born in a case regarding a local zoning ordinance should not control the level of judicial scrutiny in the highly circumscribed area of immigration law and policy. *Accord Hawaii*, 138 S. Ct. at 2420 n.5 (criticizing the assumption that "courts should review immigration policies . . . under the *de novo* 'reasonable observer' inquiry applicable to cases involving holiday displays and graduation ceremonies").

## 2.    The Defendant Cannot Demonstrate Discriminatory Intent.

Assuming this Court can use the *Arlington Heights* test to probe the motives of the legislators who passed section 1326, Rivera-Sereno's attempt to strike down the illegal reentry statute is still doomed. The reason is simple: The defendant's equal protection argument hinges on the motives of the wrong Congress.

### a.    The Defendant Erroneously Focuses on a Different Law Passed in 1929.

In an effort to prove discriminatory intent, Rivera-Sereno targets an immigration law passed in 1929 ("the 1929 Act"), a statute that the defendant alleges was motivated primarily by racism and eugenics. In support of that argument, the defendant has provided legislative records illuminating the historical (and disturbing) context in which the 1929 Act was passed nearly a century ago. However, recounting the unfortunate origins of the precursor to section 1326 should not result in this Court abandoning the deferential standard of review it is required to apply.

Rivera-Sereno's argument concerning legislators' motivations for passing the 1929 Act is based on a faulty premise. Put simply, the defendant is not charged with violating the 1929 Act. As the defendant concedes, "the original illegal reentry law codified in the [1929 Act] has been reenacted several times, most notably in the Immigration and Nationality Act of 1952" (INA). (Doc. #22 at PAGEID #55.) Section 1326 was first enacted as part of the INA, which – in the defendant's words – "collected, recodified, and revised the many existing laws governing immigration and reorganized the structure of immigration law statutes." (*Id.* at PAGEID #56.)[5] The defendant also acknowledges that Section 1326 was further amended in 1988, 1990, 1994, and 1996, respectively. (*Id.* at PAGEID #36.)

---

[5] *See* Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 276, 66 Stat. 229.

This chronology – specifically, the fact that section 1326 was enacted in 1952 – poses a problem for Rivera-Sereno's position on discriminatory intent. To try to overcome that problem, the defendant argues that under *Arlington Heights*, the enactment of the INA did not "cleanse the law of its original taint." (*Id.* at PAGEID #55.) He also criticizes Congress for "fail[ing] to repudiate racial animus" when it enacted section 1326 in 1952. (*Id.* at PAGEID #56.) Put differently, the defendant invites the Court to focus on the legislative intent in 1929, even though the statute under which he is charged was not enacted until 1952.

Rivera-Sereno's argument improperly shifts the burden to the government to show that a subsequent Congress purged section 1326 of the taint of alleged discrimination from the 1929 Act, and in doing so, runs headlong into Supreme Court precedent. Despite what the defendant contends, "[t]he allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *see City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) ("[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful."); *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987) ("Although the history of racial discrimination in this country is undeniable, we cannot accept official actions taken long ago as evidence of current intent."). Just as "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," so, too, do the views of a prior Congress form a hazardous basis for inferring the intent of a later one. *United States v. Price*, 361 U.S. 304, 313 (1960).[6]

Rivera-Sereno's position is also contrary to *Arlington Heights* itself, which imposes on

---

[6] Consider this fact: The 70th Congress, which passed the 1929 Act, and the 82nd Congress, which passed the INA, shared only 21 members. This amounts to a 96% turnover. *See Palacios-Arias*, 3:20-CR-062, Doc. #37 at PAGEID #544 (E.D. Va. Oct. 13, 2020). This explains why "[t]he starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).

the party challenging the constitutionality of a statute the burden of showing that "the challenged decision" was motivated by discriminatory intent. *Arlington Heights*, 429 U.S. at 267. Here, the defendant is seeking to overturn a federal law, and the "challenged decision" is the enactment of the statute that he is charged with violating. Thus, Rivera-Sereno must show that the Congress that passed section 1326, and not some prior Congress, acted with discriminatory purpose. Automatically imputing prior legislative motivations to section 1326, and thus skipping any meaningful analysis of the Congress that enacted the operative statute, would ignore the framework that Rivera-Sereno purports to apply.

District courts adjudicating equal protection challenges to section 1326 have relied on these principles to deny similar motions to dismiss. One court characterized the defendant's argument as "contrary to everything the Supreme Court has instructed lower courts about imputing the motivations of earlier legislatures to later ones." *Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *38. Another reiterated that "congressional intent does not necessarily carry over when a statute is amended," a "sentiment [that] is consistently observed by the courts." *Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at *7 (citing cases). A third court "rejected the notion that prior congressional intent remains operative until a future Congress makes an affirmative contrary showing." *Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *14. Taken together, this line of authority makes clear that any discriminatory purpose behind the 1929 Act has only marginal (at best) relevance to the enactment of the INA. Thus, it would be a mistake to impute the motivations for the 1929 Act to the statute, first passed 23 years later, that the defendant is accused of violating. *See Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *42-43 (concluding that circumstances under which the 1929 Act was passed "do not compel the Government today to prove that Congress expressly disavowed all prior improper motives when

15

defending a later-enacted law against an equal protection challenge, even when the historical foundation of the current law can be traced back to the earlier statute").[7]

In an effort to resuscitate his argument that the legislative record from the 1920s is somehow dispositive, Rivera-Sereno points to the Supreme Court's decisions in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020). Neither case addressed federal immigration law (or anything close to it), and neither involved an equal protection challenge. *Ramos* and *Espinoza* do not stand for the proposition that the defendant suggests, to wit, that this Court is compelled to examine the motivations for the passage in 1929 of the precursor to section 1326 and that subsequent reenactments of the statute did not purge the law of improper animus. As one district court that denied an *Arlington Heights* challenge to section 1326 put it, "*Ramos* and *Espinoza* . . . did not hold, as [defendant] would purport, that the discriminatory motivations of a previous legislature are dispositive of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature." *Wence*, 2021 U.S. Dist. LEXIS 112805, at *13-14; *see Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *42 (finding that defendant's arguments about *Ramos* and *Espinoza* do not "shift the Court's analysis from 1952 to 1929"); *see also Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *11-12; *Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at *9; *Palacios-Arias*, No. 3:20-CR-062, Doc. #37 at PAGEID #542-543 (E.D. Va. Oct. 13, 2020).

---

[7] Though affirmative steps to disavow prior racial animus are not required, "subsequent reenactments of § 1326 have cleansed the law of its original taint." *Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at *13. Post-1929 revisions to the INA include the addition of a provision expressly prohibiting discrimination in the issuance of visas and the elimination of national-origin quotas. *See Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at *9-10 "Essentially, the people themselves adopted amendments to the INA aimed at prohibiting invidious discrimination to remove the 'bad taint' of its prior iterations." *Id.* at *10.

### b.  The Defendant Has No Evidence that Section 1326 Was Motivated by Racial Animus.

Under Supreme Court precedent (including *Arlington Heights* itself), Rivera-Sereno has the burden of overcoming the presumption of legislative good faith and demonstrating that Congress acted with discriminatory intent when it passed section 1326 in 1952 or reenacted the statute in the intervening years.  *See Abbott*, 138 S. Ct. at 2325 ("[W]e have never suggested that past discrimination flips the evidentiary burden on its head.").  By any measure, the defendant's motion, which relies almost entirely on the events of the 1920s, falls far short.

Rivera-Sereno's failure to present any compelling evidence of unlawful discrimination in the passage of the INA in 1952 is telling.  Unlike prior "piecemeal immigration legislation" – such as the 1929 Act – "the INA was a comprehensive immigration statute designed to 'revise the laws relating to immigration, naturalization, and nationality.'"  *Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *19 (*quoting* Pub. L. No. 82-414, 66 Stat. 163); *see Elkins v. Moreno*, 435 U.S. 647, 664 (1978) (explaining that Congress passed the INA "[a]fter extensive study" and "as a comprehensive and complete code").[8]  Far from revealing improper racial animus or discrimination, the legislative history of the INA indicates "thoughtful, non-racially motivated public policy considerations for the passed legislation, and lead[s] to the inescapable conclusion that [the defendant's] argument that the current [section 1326] remains tainted by the 1929 Act . . . finds no basis in fact or in law."  *Wence*, 2021 U.S. Dist. LEXIS 112805, at *23-24.

The best Rivera-Sereno can do is point to a statement that President Truman made in opposition to the INA.  (*See* Doc. #22 at PAGEID #57-58.)  Notably, the former President's critique does not mention section 1326.  As a general matter, statements made by opponents of a

---

[8] As previously noted, section 1326 was first enacted in 1952 and has been reenacted and amended numerous times in the intervening years.  *See Wence*, 2021 U.S. Dist. LEXIS 112805, at *19-20 (citing amendments in 1988, 1990, 1994, and 1996).

bill are not evidence of congressional motivation and are given little weight. *Fieger v. United States Attorney General*, 542 F.3d 1111, 1119 (6th Cir. 2008); *see Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *35 ("President Truman's statements . . . do not prove that racial animus motivated Congress to enact § 1326.").

In short, Rivera-Sereno has not satisfied his burden of establishing that a "racially discriminatory intent or purpose" was a "motivating factor in the decision" by Congress to criminalize illegal reentry in 1952 (or at any point thereafter). *Arlington Heights*, 429 U.S. at 265-266. Other courts have reached similar conclusions. *See Wence*, 2021 U.S. Dist. LEXIS 112805, at *29 ("[Defendant] has not met his burden of showing that Congress acted with a racially discriminatory motive in enacting 8 U.S.C. § 1326."); *Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at *38 ("[Defendant] has not proven that racial animus was a motivating factor in the enactment of § 1326.").

### 3. The Defendant Cannot Demonstrate Disparate Impact.

With respect to the second prong of the *Arlington Heights* analysis, Rivera-Sereno asserts that the federal government uses section 1326 "as a tool of mass prosecution that disproportionately affects Mexicans and Latin Americans." (Doc. #22 at PAGEID #59.) To support his disparate impact argument, the defendant presents statistics regarding the high percentage of Mexicans and Central Americans apprehended at the southwest border since 2000 and sprinkles in a few statements made by members of the prior Administration.

As an initial matter, the metrics that Rivera-Sereno uses are less than helpful. The defendant conflates apprehensions at the border with prosecutions under section 1326. The number of individuals whom federal officers detain at the border does not necessarily prove the race or ethnicity of aliens prosecuted for illegal reentry. This problem with the metrics

immediately undermines the disparate impact argument.

Assuming their truth (and their utility), the statistics Rivera-Sereno cites in his motion do not establish that section 1326 has an unconstitutionally disparate impact on Latinos.  Reasons other than race – namely, the geographic proximity of multiple Latin countries to the United States, as well as the political, economic, and social challenges faced by people in Mexico and Central America – explain why large numbers of people from this region illegally reenter the United States and are prosecuted for violating the statute.  *See Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, at \*16; *Gutierrez-Barba*, 2021 U.S. Dist. LEXIS 99844, at \*10 ("[N]umerous courts examining similar contentions have held that criminal immigration statutes do not disproportionately affect Mexican citizens because any disparate impact may be explained on grounds other than race, such as geographic proximity to the United States.").

To the extent Rivera-Sereno can establish that section 1326 affects Latinos more or differently than other groups, his equal protection argument should still fail.  Disparate impact alone is not enough to declare a statute unconstitutional.  *Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution."); *Arlington Heights*, 429 U.S. at 266 ("[I]mpact alone is not determinative[.]")  Even if section 1326 has some disparate impact on Latinos, courts addressing motions like this have concluded that "it is not pronounced enough to give rise to an inference of discriminatory motive, given that the disparity is explainable on grounds other than race." *Wence*, 2021 U.S. Dist. LEXIS 112805, at \*29; *accord Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, at \*27-43 (rejecting equal protection challenge to section 1326 despite finding that statute has disparate impact on individuals from Latin America).  If this sort of "disparate impact" were sufficient to invalidate a federal statute, nearly all race-neutral,

generally applicable immigration policies could be challenged on equal protection grounds.

Finally, it bears reiterating that section 1326 classifies people based on their criminal conduct, irrespective of their alienage (or race). This difference matters. *See United States v. Mendoza-Hinojosa*, No. 99-50327, 2000 U.S. App. LEXIS 8068, at \*7 (9th Cir. Apr. 20, 2000) ("[T]here is a distinction between statutes which classify based on alienage and statutes which classify based on criminal actions. Given Congress' plenary power over immigration, imposing different rules on immigrants versus citizens does not in itself create a suspect classification."). The defendant has not demonstrated that Latin Americans who illegally reenter the United States are treated differently than others who violate section 1326.

### 4. Section 1326 Survives Heightened Scrutiny.

Assuming, *arguendo*, the Court finds that section 1326 was enacted with a discriminatory purpose and has a disparate impact on a disfavored group, the statute would survive heightened scrutiny. Under *Arlington Heights*, the burden would shift to the government to show that "the same decision would have resulted even had the impermissible purpose not been considered." *Arlington Heights*, 429 U.S. at 270 n.21. Rivera-Sereno asserts that under this scenario, the government must establish that the 1929 Act would have passed absent the alleged discriminatory purpose. (*See* Doc. #22 at PAGEID #61.) That is not the correct way to frame the issue. Instead, the Court should ask whether Congress would have enacted the INA (specifically, section 1326) if the supposed discriminatory purpose had not been considered. *See Palacios-Arias*, No. 3:20-CR-062, Doc. #37 at PAGEID #544 (E.D. Va. Oct. 13, 2020).

For at least three reasons, the answer to that question is "yes." First, as explained above, Rivera-Sereno has offered virtually no evidence that the INA was tainted by improper animus, so it is difficult to discern what "impermissible purpose" should not have been considered. Second,

Congress's repeated, post-1952 amendments to section 1326 – none of which were motivated by a racially discriminatory purpose – leave no doubt that the statute would have been enacted without the improper motivation.  Third, Congress passed the INA for perfectly legitimate reasons, such as deterring illegal reentry and protecting American economic interests.  *See Palacios-Arias*, No. 3:20-CR-062, Doc. #37 at PAGEID #544-545 (E.D. Va. Oct. 13, 2020) (concluding that equal protection challenge to section 1326 would fail under *Arlington Heights's* heightened scrutiny).  Thus, the defendant's equal protection challenge should be rejected under a more searching standard of review.

## **CONCLUSION**

For the reasons stated herein, the defendant has not established that 8 U.S.C. § 1326 violates equal protection and should be struck down as unconstitutional.  Accordingly, the motion to dismiss the indictment should be denied.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney


s/Brian J. Martinez
BRIAN J. MARTINEZ (CA 224587)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office:  (614) 469-5715
Fax:  (614) 469-5653
E-mail:  Brian.Martinez2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Response to Defendant's Motion to Dismiss the Indictment was served this 30th day of September, 2021, electronically upon Stacey MacDonald, counsel for the defendant.

s/ Brian J. Martinez
BRIAN J. MARTINEZ (CA 224587)
Assistant United States Attorney
