IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Case No. 2:21-cr-129 |
| Plaintiff, | : |
| | : Chief Judge Algenon L. Marbley |
| v. | : |
| | : |
| ARMANDO RIVERA-SERENO, | : |
| | : |
| Defendant. | : |

**OPINION AND ORDER**

This matter comes before the Court on Defendant Armando Rivera-Sereno's Motion to Dismiss the Indictment. (ECF No. 22). For the following reasons, the Motion is **DENIED**.

I.      BACKGROUND

Mr. Rivera-Sereno is a Mexican citizen with no legal status in the United States. (ECF No. 1 at 2). On September 5, 2003, he was ordered removed from the United States by an Immigration Judge in Washington D.C. (*Id*.). Defendant was physically removed from the country four days later, on September 9, 2003. (*Id*.). That Order of Removal was reinstated on February 14, 2005, after Defendant was encountered by Border Patrol in Eagle Pass, TX. (*Id*). Shortly thereafter, on February 25, 2005, Defendant was convicted of Illegal Entry into the United States, in the United States District Court for the Northern District of Texas[1] and sentenced to a term of imprisonment of 179 days.[2] (*Id*. at 2–3). After the expiration of his sentence, the September 2003 Order of Removal was reinstated again, and he was removed from the United States to Mexico on August 19, 2005. (*Id*.). That Order was reinstated two more times—April 17, 2012 and April 29, 2005.

---

[1] Case Number 1:05-mj-021
[2] He was also ordered to pay a $10 special assessment. (ECF No. 1 at 3).

(*Id*. at 3). Each time Plaintiff was removed from the United States to Mexico after being encountered by Border Patrol in Texas. (*Id*.).

Most recently, on July 15, 2021, a grand jury returned an indictment charging Defendant with one count of illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a).[3] (ECF No. 14). This most recent charge stems from Defendant's arrest for felonious assault in Columbus, Ohio on February 2, 2021, after he allegedly shot his roommate in the torso with a shotgun. (ECF No. 1 at 3). "After a verification of fingerprints, [U.S. Immigration and Customs Enforcement] determined that [Defendant] had previously been ordered removed from the United States and is subject to prosecution for illegal re-entry, being found in the United States after being barred from reentering this country for a period of 20 years." (*Id*.). Defendant entered a plea of not guilty to the charge in the indictment. (Minute Entry, Arraignment, July 23, 2021).

After the trial date for this matter was twice continued (*see* ECF Nos. 19, 21), Defendant moved to dismiss the indictment, arguing 8 U.S.C.§ 1326 is unconstitutional under the Equal Protection Clause of the Fifth Amendment. (*See generally* ECF No. 22). Because of this alleged unconstitutionality, Defendant argues his July 2021 indictment must be dismissed. (*Id*.). Plaintiff responded to the Motion on September 30, 2021, maintaining Defendant has not established the unconstitutionality of the Illegal Reentry statute, and therefore, his Motion should be denied. (*See* ECF No. 23). Defendant's Motion is now ripe for review.

---

[3] The statute reads "any alien who – (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both." Immigration and Nationality Act, Pub. L. No. 82-414, § 276, 66 Stat. 229 (codified at 8 U.S.C. § 1326 (1952)).

While his Motion was pending, Defendant moved to continue the trial date. (ECF No. 28). Defendant represented that "[w]hether the case proceeds to trial is greatly impacted by the Court's ultimate determination on the pending motion[,]" because if the motion is denied, he will likely accept the government's pending plea offer. (*Id*. at 2). This Court granted the unopposed motion to continue, rescheduling the trial in this case for December 13, 2021. (ECF No. 29).

## II.     LAW & ANALYSIS

### A.  The Parties' Arguments

Defendant maintains that 8 U.S.C. § 1326(a), the Illegal Reentry statute under which he was indicted, violates the equal protection guarantee of the Fifth Amendment. (*See generally* ECF No. 22). More specifically, he argues that the history surrounding the statutes' enactment and enforcement, shows both discriminatory intent as well as a disparate impact on Mexicans and Latinx persons. (*Id*.). Moreover, Defendant asserts that "the federal government's plenary power over immigration matters does not provide it license to enact racially discriminatory statutes in violation of the Equal Protection of the Fifth Amendment." (*Id*. at 4).

Defendant spends the bulk of his Motion setting forth the historical background of the Illegal Reentry statute, focusing almost exclusively on the statute's predecessor—the Undesirable Aliens Act of 1929 (the "UAA"). (*Id*. at 6–17). Defendant highlights a "broad social movement founded on principles of white supremacy and eugenics[4] [which] gained popular support in the 1920s[,]" and fueled the enactment of the UAA. (*Id*. at 17). Members of the 1924 Congress, Defendant maintains, were repeatedly reminded of the "inferiority" of the "Mexican race" during legislative sessions in the five years leading up to the passage of the statute. (*Id*.). Defendant argues that this historical evidence "easily meets–if not exceeds–the evidence requirement in *Arlington*

---

[4] To this point specifically, Defendant emphasizes the work of "notorious eugenics expert" Dr. Harry H. Laughlin, who "promoted theories of racial inferiority through multiple reports and testimony to Congress." (ECF No. 22 at 17).

*Heights*." (*Id.* (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."))).

He concedes that the UAA "has been reenacted several times, most notably in the Immigration and Nationality Act of 1952." (*Id.* at 21). These reenactments, says Defendant, "does not cleanse § 1362 of its racist origin[,]" particularly given Supreme Court precedent establishing that "a discriminatory purpose that fueled a law's original enactment remains relevant in determining its constitutionality." (*Id.* at 20–22 (citing *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020)).

Finally, Defendant argues that § 1326 disparately impacts Latinx individuals. He cites several statistics showing the proportion of apprehensions at the U.S. boarder are Mexican and Latinx persons. (*Id.* at 24–26). He further highlights several public comments from both former Attorney General Jeff Sessions and senior policy advisor to President Trump Stephen Miller, which purport to show "that § 1326 has disparately impacted Mexican and Latinx immigrants and continues to do so today." (*Id.* at 26). Satisfied that he has met his burden under *Arlington Heights*, Defendant concludes by stating that the burden now shifts to Plaintiff to show the UAA "would have passed 'even had the impermissible purpose not been considered.'" (*Id.* at 27 (quoting *Arlington Heights*, 429 U.S. at 266–68, 270 n. 21)).

The Government makes three arguments in response. First, it argues that because the Illegal Reentry statute "is part of the federal government's immigration regulation framework, an area over which Congress has vast authority[,] . . . the constitutionality of the statute should be evaluated under the rational basis standard." (ECF No. 23 at 2–3). Under this deferential standard, argues

4

Plaintiff, § 1326 passes constitutional muster because its goal of deterring "illegal reentry by previously deported aliens [] bears a rational relationship to the government's legitimate interest in enforcing its immigration laws." (*Id*. at 3 ("[A] more searching judicial inquiry is not appropriate.")).

Second, Plaintiff asserts that, "to the extent the Court finds it necessary to apply the *Arlington Heights* analysis, [] [D]efendant cannot satisfy his burden of showing discriminatory intent and disparate impact." (*Id*.). Specifically, it maintains that Defendant both focuses on the motives of the wrong Congress—the 1929 Congress, rather than the 1952 Congress—and fails to account for the fact that the alleged disparate impact is a function not of unlawful discrimination, but of the proximity of Latin American countries to the [U.S.] and the political, social, and economic conditions in Mexico and Central America." (*Id*.).

Third, Plaintiff argues that Defendant's argument is "not novel." (*Id*.). It cites numerous cases from across the country wherein courts denied motions from defendants charged with illegal reentry . . . challenging the constitutionality of [§] 1326 on equal protection grounds under *Arlington Heights* . . ." (*Id*. at 3–4 (citing (*See United States v. Bernal*, No. 21-CR-01817, 2021 U.S. Dist. LEXIS 178922 (S.D. Cal. Sept. 20, 2021); *United States v. Sanchez-Rodriguez*, No. 21-CR-02351, 2021 U.S. Dist. LEXIS 178896 (S.D. Cal. Sept. 20, 2021); *United States v. Orozco-Orozco*, No. 21-CR-02349, 2021 U.S. Dist. LEXIS 178951 (S.D. Cal. Sept. 20, 2021))). Plaintiff takes specific aim at Defendant's reliance on *United States v. Carrillo-Lopez*, 3:20-cr-00026-MMD-WGC, 2021 WL 3667330 (D. Nev. Aug. 18, 2021), asserting that it is merely an "outlier that is inconsistent with well-established precedent." (*Id*. at 4).

### B. The Court's Analysis

Under the Fifth Amendment of the U.S. Constitution, no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. "The clause contains an implicit guarantee of equal protection in federal laws identical to what the Fourteenth Amendment guarantees in state laws." *United States v. Novondo-Ceballos*, No. 21-CR-383 RB, 2021 WL 3570229, * 1 (D.N.M. Aug. 12, 2021) (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n. 1 (2017)). There are three standards Courts apply when evaluating the constitutionality of statutes that, like 8 U.S.C. § 1326, involve the classifications of persons—rational basis, intermediate scrutiny, or strict scrutiny. *Id*. at * 2. Furthermore, to find a statute violative of equal protection under the latter two standards, the aggrieved person must show that the statute is either: (1) facially discriminatory (*see, e.g., Loving v. Virginia*, 388 U.S. 1 (1967)); (2) facially neutral but applied in a discriminatory manner (*see, e.g., Yick Wo v. Hopkins*, 118 U.S. 356 (1886)); or (3) facially neutral, but enacted with a discriminatory purpose, which disparately impacts a specific group (*see, e.g., Arlington Heights*, 429 U.S. 252 (1977)). Defendant challenges § 1326 under this third rationale. There is, however, a prefatory analysis which this Court must conduct.

As detailed above, the parties disagree on what standard of review this Court should use. Defendant claims § 1326 should be analyzed under strict scrutiny and *Arlington Heights* because there is both a discriminatory motive behind the UAA, and because the statute still poses a disparate impact on Latinx individuals. Notably, Defendant cites only one case where the *Arlington Heights* framework was applied in an immigration case, *United States v. Carrillo-Lopez*.[5] The Government, meanwhile, maintains that the proper standard of review here is rational basis given Congress's plenary power to regulate immigration.

---

[5] This case is currently under appeal in the Ninth Circuit.

Upon review of the legal landscape, this Court finds that "application of *Arlington Heights* to an immigration law challenge is misplaced and contrary to long standing United States Supreme Court precedent." *United States v. Samuels-Baldayaquez*, No. 4:20 CR 83, 2021 WL 5166488, * 2 (N.D. Ohio Nov. 5, 2021). Congressional authority over immigration is both "broad" and "undoubted." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1089 (9th Cir. 2021)("[I]t has been universally acknowledged that Congress possesses sweeping authority over immigration policy as an incident of sovereignty.") (internal quotation marks omitted). This authority extends to the admission and expulsion of aliens. *Almario v. Attorney General*, 872 F.2d 147, 150 (6th Cir. 1989) (detailing the Supreme Court's acknowledgment of "Congress' unfettered discretion over the admission or expulsion of aliens").[6] The Sixth Circuit specifically, has repeatedly held that equal protection challenges to immigration-related statues are subject to rational basis review. *See Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425 (6th Cir. 2012); *see also Sad v. I.N.S.*, 246 F.3d 811 (6th Cir. 2001) (" In the case of immigration matters, rational-basis review requires even less because of Congress's plenary power over the field."); *Hamama v. I.N.S.*, 78 F.3d 233 (6th Cir. 1996); *Almario*, 872 F.2d at 150. Given this precedent, this Court's role in reviewing the constitutionality of § 1326 is "limited to the application of a rational basis review, using 'minimal scrutiny.'" *Samuels-Baldayaquez*, 2021 WL 5166488 at * 2 (quoting *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1693 (2017)).

To satisfy rational basis review, there must be "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

---

[6] Of some note, as highlighted by the Court in *Samuels-Baldayaquez*, "[a] plurality of the Supreme Court recently declined to apply the rational basis standard to an equal protection challenges of executive branch actions involving immigration." *See* 2021 WL 5166488 at * 2 n. 3 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020); *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020)). That plurality, however, does not supplant the cases cited above and, importantly, "neither case addressed congressional acts that were subject to the checks and balances of the legislative branch." *See* 2021 WL 5166488 at * 2 n. 3.

In undertaking such review, this Court is not required to "identify the legislature's actual rationale for the distinction; rather, we will uphold the statute if 'there are plausible reasons for Congress' action.'" *Hamama*, 78 F.3d at 237 (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

This Court need not go searching for the Congress' actual rationale for enacting §1326. The statute's purpose is clear. It is squarely aimed at regulating immigration and deterring illegal reentry by individuals who have previously been deported. *See* 8 U.S.C. § 1326(a). This purpose has been widely recognized as legitimate. *See Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and unalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare[.]"); *see also Samuels-Baldayaquez*, 2021 WL 5166488 at * 2 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)) (detailing the well-known "right to establish means, including the establishment of criminal consequences, to enforce . . . [immigration] restrictions"). Criminalizing illegal reentry into the United States is rationally related to this legitimate government interest. *See Samuels-Baldayaquez*, 2021 WL 5166488 at * 3; *see also United States v. Amador-Bonilla*, No. CR-21-187-C, 2021 WL 5349103, * 1–2 (W.D. Okla. Nov. 16, 2021). At bottom, in line with most Courts across the country, this Court finds that Congress' right to enforce immigration restrictions provides a rational basis for the Illegal Reentry statute.

For all intense and purposes, this is where this Court's analysis ends. However, for the sake of thoroughness, this Court briefly details why even if the strict scrutiny of *Arlington Heights* applied, Defendant has still failed to show an equal protection violation.

To begin, as Plaintiff asserts, the primary flaw in Defendant's argument is his focus on the 1929 UAA. The first step in applying *Arlington Heights* is to identify what decision maker and

decision is being reviewed. *Arlington Heights*, 429 U.S. 252 (1977). Here, Defendant is not being subject to the UAA, but rather the 1952 reenactment. There is no evidence of discriminatory motivation in the 1952 enactment of § 1326, or in its subsequent revisions.[7] *See Novondo-Ceballos*, 2021 WL 3570229 at * 5 ("[T]he Court finds that subsequent reenactments of § 1326 have cleansed the law of its original taint."). Defendant's argument that recent Supreme Court precedent "confirm[s] that a discriminatory purpose that fueled a law's original enactment remains relevant in determining its constitutionality[,]" is misguided. (ECF No. 21 at 20). The cases Defendant cites in support of this position, *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), do not stand for the proposition that "the discriminatory motivations of a previous legislature are dispositive of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature." *United States v. Gilberto Arana Wence*, No. 3:20-CR-0027, 2021 WL 2463567 * 5 (D.V.I. June 16, 2021). Moreover, neither case addresses federal immigration law.

Finally, even if this Court accepts Defendant's representations regarding the disparate impact of § 1326 on Mexican and Latinx individuals, "there is no evidence that this is due to an invidious discriminatory purpose, rather than some neutral factor such as geographic proximity to the border." *Samuels-Baldayaquez*, 2021 WL 5166488 at * 3; *see also United States v. Gutierrez-Barba*, No. CR1901224001PHXDJH, 2021 WL 2138801, * 4 (D. Ariz. May 25, 2021) ("[N]umerous courts examining similar contentions have held that criminal immigration statutes do not disproportionately affect Mexican citizens because any disparate impact may be explained on grounds other than race, such as geographic proximity to the United States.").

---

[7] "The Illegal Reentry provision of 8 U.S.C. § 1326 was enacted by the 82nd Congress in 1952, over the veto of then President Truman. It has been amended multiple times, including by the Immigration and Nationality Act of 1965 and the Immigration Act of 1990." *Samuels-Baldayaquez*, 2021 WL 5166488 at * 1. (citations omitted).

Ultimately, regardless of the applicable standard, Defendant has failed to show that the Illegal Reentry statute under which he was indicted violates the equal protection guarantee of the Fifth Amendment. The statute's purpose of deterring illegal reentry by previously deported aliens bears a rational relationship to the government's legitimate interest in enforcing its immigration laws. Furthermore, while the statute's precursor "undisputedly contained racist, discriminatory language and arguments directly aimed at reducing or eliminating Mexican immigration . . . , no such evidence . . . has been shown to have motivated the [] Congress that adopted the current statute." *Samuels-Baldayaquez*, 2021 WL 5166488 at * 1.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 22) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  December 1, 2021**